May it please the Court, Albert Chao on behalf of the petitioner Guoqing Zhang. Your Honours, this is an asylum case, and in this case credibility is not an issue. The sole issue in this case is whether or not the petitioner was persecuted on account of one of the five enumerated grounds for asylum. And in this case we believe that it falls under political opinion. Under Ninth Circuit Law, we only need political opinion to be one central reason for the mistreatment. And in this case we believe that the petitioner was persecuted on account of him opposing government corruption in this case. And Mr. Chao, on page 14 of the brief, you indicated that the petitioner was arrested a second time in October 15, 2014 for continuing to write letters to the municipal government and threatening to appeal. Were there more than one letters written? Yes, Your Honour. Well, his testimony was, and also in his asylum statement, that he wrote, well he sent multiple letters after the first arrest. So yes, there were more than one written. Because the record showed there was one letter that he wrote in February of 2014, and then I thought he'd testify of a letter that he wrote a couple days before his arrest. Your Honour, he had only evidence of one letter that he actually submitted in support of his claim. There were other letters that were written, but he did not submit those letters. He did not have those in his possession. But he testified... Excuse me, go ahead, please. But he testified, credibly testified, that there were multiple letters that were written. Did he submit the second letter that he wrote in October as part of the evidence? No, the one letter that he submitted was the first letter that he wrote. So he testifies to subsequent letters, but he did not have those letters. Correct, correct. But even if he doesn't have those letters, again, his testimony was found to be credible, so therefore we're going to have to take his testimony as true. And what did he testify as to the content of the subsequent letters? He continued to write letters in opposition to the corruption that he previously had stated in the first letter, and he had complained that he had been retaliated against because he had opposed government corruption in the first place. And where in the record is that portion of the testimony? I believe I cited that in my brief. I believe that would be the administrative record 103-104 and also on page 106. That's when he testified about the second letter that he wrote. And, Your Honors, I cited a case, Zhu v. Mukasey, that I believe is very similar to this. In that case, Zhu claimed that she was raped by a manager of a state-owned enterprise, and she had written a letter to the town government requesting an investigation into this matter and also complaining that because he was a government official, he had been shielded by other officials to get an investigation going. And she was arrested for this, and the police in that case essentially didn't question her about anything about the investigation of the rape but focused on why are you complaining about the government officials protecting each other. And the Ninth Circuit correctly in that case stated that she was arrested on account of her political opinion, on account of her complaints, not because of a personal dispute with the manager over whether or not he raped her. And I believe in this case, it's very similar to this case that we have in the present case. In this case, he may have been retaliated against for, you know, crashing a dinner party where the official was having dinner with other officials, but the main reason why he was persecuted, harmed, assaulted by the police is because what they said, quote-unquote, disrupting public social order and malicious desire to oppose the government. Well, disrupting social order sounds like it has a lot more to do with crashing the party and causing a disruption than it does about sending a letter. Why do you say that the main or essential reason is this opposition to government? If it had been mainly just disrupting social order, perhaps I could understand that, but it's taken in context. It's both. It's disrupting, he said, public social order and a malicious desire to oppose the government. So I believe that if you take both of those... That could be resistance to the police. It could be construed that way, yes, but that, again, that would only be for the first arrest. Certainly the second arrest for writing letters after the first arrest, that was completely because of those letters. That had nothing to do with... Well, you've heard more than once to multiple letters. Yes. I don't recall more than... I know there was testimony about a second letter. Is there testimony about more than that? Well, his original... the very first, he made a complaint to the workers' union. After that, he wrote a letter complaining about government corruption. And then after that is when he first crashed the dinner party. Complaining about corruption. Yes. Did he talk about government corruption? He's sending this to the government. He's presumably not complaining about the government he's sending it to if he expects relief. He's complaining about corruption... It's the company. ...of the officials at his company, which is a state-owned enterprise, and also government officials. So he was complaining about these particular officials, yes. Well, government officials meaning the corporate officers or somebody separate with the government. Correct. The problem here is trying to decide whether this state-owned enterprise complains about corruption, is government or individual. The agency says it's not government. And what is it in the evidence that compels us to conclude that it is government? Well, I believe that those are intertwined when you're talking about an authoritarian government, a communist government in which the officials are also managers of companies. Do we have any law that says that? What we're talking about is officials that are acting in their official capacity. I mean, the corruption he was complaining about was taking bribes, I'm sorry, taking bribes and things of that nature. It's not something that's completely personal and separate from your being an official. And that's why I believe that those two are intertwined together. I don't think our law says that anybody who's corrupt working for a state-owned enterprise is acting in a government capacity and that opposition to that kind of corruption is political. Indeed, our case law says something to the contrary. What makes this government and what makes this political? What makes it political is it's not necessarily the critical factor, it's not the intent of the petitioner in this case, but the views of the persecutor. The persecutors are the ones with the motive. And in their motive, what they said when he was in jail and when he was being mistreated by the police was, you are disrupting public social order, you have a malicious desire to oppose the government. There was a long period of time between his arrest in, I think it was in May, between that period of time and the October 2004 arrest. Did he write letters? Did he continue to protest during that period of time? It seems like there was no activity taken for over a year. That is true. After his first letter, there was nothing until the time when he found out that there was a dinner party where there were many high-ranking officials attending and he decided to go there and make his complaint. Actually, I'm referring to the time period between his first arrest and his second arrest. He was arrested after the incident at the restaurant in May of 2003 and then he was arrested again, I think, in October of the next year. Yes. So wasn't there like over a year's period of time? Yes, there was and that's where the testimony is that he had written other letters, multiple letters during that time period, but it wasn't specified in the testimony as to when each and every letter was written and how much time elapsed between the letters that were written and the second arrest. And the content of these letters were allegedly the same? The same and also complaints about retaliation for his original complaint about government corruption or the official corruption. Because he was terminated by that point in time? He was terminated by that point, yes, Your Honor. And so, you know, we believe that overall, if you take into account the cumulative effect of everything that he's done from the written letters to the complaint to the workers' union to him going to the dinner party, we're not taking each in isolation, but as a cumulative effect, all of those, we believe that he was, the persecution that he suffered was based on his malignant condition. I just want to save time for rebuttal. You have about a minute. Yes, Your Honor. Thank you. Good morning. May it please the Court. I'm Paul Furiano for the Attorney General. Judge Clifton, your questions highlight the key aspect of this case that the Court needs to focus on, and it's the petitioner's burden to show that Mr. Zhang's political opinion was one central reason for the actions of the police. So that if there were two reasons, one was that he was making trouble, and two, that he was complaining about corruption. Complaining about corruption would be enough. Complaining about corruption, if it was a central reason. Yes, a reason, a central reason. A central reason. If there were two reasons, and we couldn't tell which was predominant, it would be a central reason. If there are two reasons, and you can't tell whether political opinion was a central reason. How do you tell whether it's a central if you just have two reasons? You can have two central reasons. The case law says that a central reason is a political belief without which the persecutor wouldn't have acted. Well, a central reason means that there can be more than two central reasons. Correct. And if you have two reasons which are equal, and I don't even think they are equal, so let me just tell you that, but if there were, if they said you're a troublemaker and you're complaining about corruption. And if there were two central reasons. That would qualify, even though there was also another central reason. Right. But Mr. Zhang's burden is to prove that the evidence, that the record of evidence compels the conclusion. And with respect to the first arrest, I think the evidence does not compel that conclusion. What did they say to him at the time about the reason they were arresting him or beating him for seven days? Because he disrupted a dinner party? Yes. They said anybody who disrupts a dinner party, that's a terrible thing and we're going to beat them for seven days. Don't you think it's more likely they beat him for the other reason? I'm not compelled to conclude that. Well. And I think that's his burden. That is his burden to show that, because look what happens. He writes the letter and nothing happens to him until he crashes the dinner party. And he crashes the dinner party and there's no compelling evidence in the record that the police knew about his letter when the police arrested him. Because the police are the actors here. The police arrested him for disturbing the peace. The police said he had a malicious desire to oppose the government. That, yes. Don't you think that's imputed political opinion? I don't think the record compels that conclusion. Even though they told him that he had malicious desire to impose the government. Well, as Judge Clifton pointed out, it could be that he was resisting arrest, which he admits that he did. And that's a malicious desire to oppose the government, in your view. Yes, I think it could be. I don't think that the record compels that. I hope your case doesn't depend on that. Well, let's take a look at what else happened. Sixteen months go by, nothing happens. He's not charged with anything. He's not charged with resisting arrest. He's not listed as a government subversive. And then he writes the second letter in, I think it's, well it's 16 months later anyway. And then he gets arrested again and is arrested for two days. For what? And detained for two days. Well, according to his testimony, he's not sure. He guesses that the second letter went from his employers to the police. Did the police give him any reason to arrest him? Excuse me? Did the police give any reason why they arrested him? I think the record evidence that I recall, Your Honor, is that he was charged with, he was accused of disturbing the social peace. He was accused of disturbing the peace and creating social disruption. And working with foreign elements and foreign organizations. I don't recall that in the record, Your Honor, that he was accused of working with foreign elements. So, with respect to the first arrest, there's no nexus. In the record, doesn't it say the police told his wife he'd gone over to the Western enemies in an attempt to subvert the Chinese government? Maybe, I don't recall seeing that, Your Honor. But his ability to leave China is another telling factor to consider. He was told, according to his testimony and his report, he was told not to leave the country, not to leave the local area, and he had to report to the police. Yet, somehow, he was able to obtain a visa and leave China. Now, if he was listed as a subversive or as a wanted criminal, China would not have given him a visa to leave the country. You have a lot more confidence in the efficiency of the Chinese bureaucracy than may be warranted. We've had a lot of cases where people have gotten visas. Understood, Your Honor. But, you know, in the absence of that evidence to compel the conclusion that he has a well-founded fear or that he's a substantial probability of being persecuted in the future. Ten percent chance of persecution. What's that? Ten percent chance of persecution is Cardozo-Fonseca's standard. Right. And the persecution in that instance has to include a nexus as one central reason. And there's a probability of persecution, but remember, the key factor in this case is Not a probability, a ten percent chance. A ten percent probability, ten percent chance. But remember, in that ten percent, he still has to show that the record compels the conclusion that his political opinion will be one central reason. And you would take the two arrests together, I assume. You wouldn't look at it in isolation. No, you can't do that. You can't? No, because he has to show past persecution. And with respect to the first arrest, he has no nexus. And with respect to the second arrest, it didn't rise to the level of persecution. Let's assume you're trying to find out what the motive was. And they tell him it's two things. And one is you're opposing the government. You can't look at the second time they arrest him to shed light on the first, you're saying. Because it's a different incident. I understand it's a different incident. The way the statute is written is you have to show persecution on account of. The level of harm has to coincide with the nexus. And in this case, the nexus has to be compelling evidence of his political opinion being a central reason for his persecution with respect to the first arrest. Assuming for the sake of argument, and we don't concede this, assuming for the first arrest his harm rose to the level of persecution, we don't think that the record compels the conclusion that the police arrested him because they knew about his anti-corruption beliefs and that they wanted to punish him on account of that as one central reason. His burden is to show that. And so the first incident is not persecution. Let's assume you were right. That despite the fact that his testimony is credible, and he said that they told him that his opposition to the government was one of the reasons, had a malicious desire to oppose the government. Let's assume for some reason beyond me, you would say that when they told him that, that doesn't show that that was a reason, his opposition to the government. Then we come to a second arrest where he did nothing except write a letter that we know of as any reason for his arrest. And you say that wouldn't be relevant in any way to why he was arrested the first time or beaten the first time? I don't think so. Okay. Given an opportunity to testify, what did he say about the second arrest? He was kind of vague about the second arrest. He was vague both in terms of why the police arrested him and the level of harm that he had. But didn't he testify that he was told not to attack the company's leadership and to stop disturbing the peace? He was told that. And the question is, to the extent that that is his evidence, his credible evidence, does that compel the conclusion that it was his anti-political beliefs, his anti-corruption beliefs as a political opinion, that formed the basis for the police saying that? I wouldn't know. Nothing happened to him for, as you said, about 16 months. He sent the second letter complaining and threatening to go to the central government and then he got arrested. Does that compel the conclusion that he was persecuted because of his political opinion? Without the persecution itself? No. Let's assume for the sake of argument, Your Honor, that the second letter was motivated the police as a central reason, not at least in part. A petitioner argued about the Jew case, and that's an apposite because that is the old case law predated the Real ID Act. Let's assume for the sake of argument, we don't concede this, that the second arrest was motivated by the police's desire to subjugate his anti-corruption political opinion and that it was a central reason. He still has to show for that second arrest that the harm he received from the police rose to the level of persecution. So that's a critical element, and the record here does not compel the conclusion that his two-day arrest, after which he was released and suffered no injuries, doesn't compel the conclusion that that rose to the level of persecution. I thought he was also heart-beaten during that second arrest and then he was continuously monitored after that. The monitoring is not persecution. He had to check in with the police. That's not persecution, and it doesn't factor into that. It's got to be a severe level of harm. He had to be physically harmed to amount to persecution? A simple beating. I know it sounds severe, but a simple beating was a case called Gu in this court. A simple beating and a two-day detention did not rise to the level of persecution. Persecution is an extreme concept. So without both a nexus and persecution, you don't qualify for asylum. So our position is that with respect to the first arrest, there was no nexus. With respect to the second arrest, there was no persecution. Did the BIA say that? I think they did, Your Honor. They said, what did they say? I recall the BIA decision being focused on the nexus issue, not on whether it rose to the level of persecution issue. I believe they said somewhere, and I'm sorry I can't find it. I'm running out of time. Well, actually, we've taken you over time already. Oh, yes, I am over time. I'm sorry. I apologize. I think the board did mention in an offhand way that the second arrest was minor, and he certainly didn't suffer any injuries to require hospitalization. Well, we can look for it. Okay. Are there any further questions? Thank you. Thank you. Your Honors, yes, the BIA did attempt to say such a thing that the second arrest was a quote-unquote brief detention and that it did not rise to the level of persecution. But as Judge Reinhart pointed out, you cannot take these in isolation. This is clearly a series of events that happened and a series of arrests and such that occurred. So you have to take them all cumulatively, and we're talking about two arrests, and he was physically assaulted both times. And as Judge Dew pointed out, afterwards he was required to report back to the police. So this is not just a person who's crashing a dinner party. He would not have been asked to report back to the police unless they were concerned about something more than that, and that is why we believe that this is based upon political opinion. Thank you. Thank you. The case is arguably submitted.
judges: Du, Reinhardt, Clifton